(47 Misc. Rep. 281.)

PEOPLE ex rel. UNGRICH et al. v. CRAIN, Tenement House Com'r.*

(Supreme Court, Special Term, New York County. May, 1905.)

MUNICIPAL CORPORATIONS—BUILDING REGULATIONS—TENEMENT HOUSES.
    Tenement House Act, Laws 1901, p. 902, c. 334, § 56, as amended by Laws 1903, p. 407, c. 179, § 29, provides that, where a lot running through from street to street is over 100 feet in depth, a yard space shall be left throughout the center of the lot midway between the two streets, and shall extend across the entire width of the lot, etc. Section 53 of the act, as amended by Laws 1902, p. 926, c. 352, provides that behind every tenement house there shall be a yard extending the entire width of the lot. *Held*, that no tenement house building can be erected without a yard space, and the tenement house commissioner will not be compelled by mandamus to approve plans which do not provide for such yard space.

Application by the people, on the relation of Louis Ungrich and others, for peremptory writ of mandamus against Thomas C. T. Crain, as tenement house commissioner. Denied.

Stuer & Hoffman (Edward W. S. Johnston, of counsel), for relator.
John J. Delany, Corp. Counsel (John P. O'Brien, of counsel), for respondent.

LEVENTRITT, J. This is an application for a peremptory writ of mandamus commanding the respondent to approve the relators' plan for a tenement house. The plan has been rejected on the ground that it fails to show compliance with section 56 of the tenement house act (Laws 1901, p. 902, c. 334). In the view I take of the case there is no dispute as to material facts, the question before me being simply one of construction of legislative provision. The relators, owning a lot of land running through from street to street and more than 100 feet in depth, propose to build a tenement fronting on both streets, with interior open spaces on the northerly and southerly sides of the building, respectively, but without any open space extending across the entire width of the lot midway between the two streets. The respondent has refused to approve the plan on the ground that the loca-

tion and dimensions of the lot and building are such as to prohibit, within the mandatory requirements of the tenement house act, the extension of the building from street to street uninterrupted by an intervening open space. The lot of land in question is situated on the easterly side of Amsterdam avenue, 50 feet north of 159th street. It has a frontage of 50 feet on Amsterdam avenue and runs through to the westerly side of St. Nicholas avenue, where it has a similar frontage. On the northerly side the depth of the lot is 117 feet 2 inches, and on the southerly side 126 feet 6 inches. •To the south of the lot in question is a lot 50 feet in width, bounded on the south by 159th street. The relators set forth the condition of the rest of the block to the north of their land, but in view of the respondent's denials I may accept as fact nothing further than that Amsterdam and St. Nicholas avenues converge at the northerly end of the block. The sketch or diagram submitted by the relators to the respondent showed a six-story building, having four apartments on a floor, running through from avenue to avenue, with an inner open space 63 feet long and 12 feet 6 inches wide on the southerly lot line, and with a precisely similar open space on the northerly lot line. There is no other provision for interior open or unoccupied space. The plan shows, however, an exterior open space on St. Nicholas avenue, where the entrance is to be situated. This space is 9 feet 4 inches at the southerly line of the lot, is triangular in shape, and loses itself in the building line at the northerly line of the lot. The provisions of the tenement house act applicable are the following sections of chapter 3, providing for "light and ventilation":

"Sec. 53. Yards.—Behind every tenement house hereafter erected there shall be a yard extending across the entire width of the lot, and except upon a corner lot, at every point open from the ground to the sky unobstructed, except that fire escapes or unenclosed outside stairs may project not over four feet from the rear line of the house. The depth of said yard, measured from the extreme rear wall of the house to the rear line of the lot, shall be as set forth in the two following sections." Laws 1902, p. 926, c. 352.

"Sec. 54. Yards of Interior Lots.—Except upon a corner lot the depth of the yard behind every tenement house hereafter erected sixty feet in height shall be not less than twelve feet in every part. Said yard shall be increased in depth one foot for every additional twelve feet of height of the building, or fraction thereof; and may be decreased in depth one foot for every twelve feet of height of the building less than sixty feet; but it shall never be less than ten feet in depth in any part." Laws 1901, p. 901, c. 334.

"Sec. 55. Yards of Corner Lots.—The depth of the yard behind every tenement house hereafter erected upon a corner lot shall be not less than ten feet in every part, provided that where such lot is less than one hundred feet in depth, the depth of the yard may be not less than ten percentum of the depth of such lot, but shall never be less than five feet in every part, not less than the minimum width of an outer court on the lot line as prescribed by section fifty-eight of this act. Where a tenement house hereafter erected on a corner lot has no basement and the cellar ceiling is not more than two feet above the curb level, said yard may start at the level of the second tier beams. Where a corner lot is more than fifty feet in width, the yard for that portion in excess of fifty feet shall conform to the provisions of section fifty-four of this act." Laws 1903, p. 407, c. 179.

"Sec. 56. Yard Spaces of Lots Running Through from Street to Street.— Wherever a tenement house hereafter erected is upon a lot which runs through from one street to another street, and said lot is not less than seventy

feet nor more than one hundred feet in depth, there shall be a yard space through the center of the lot midway between the two streets, which space shall extend across the full width of the lot and shall never be less than twelve feet in depth from wall to wall, and shall be increased in depth as prescribed in section fifty-four of this act. But where such building has no basement and the cellar ceiling is not more than two feet above the curb level, such yard space may start at the level of the second tier of beams. Where such lot is over one hundred feet in depth such yard space shall be left through the center of the lot midway between the two streets, and shall extend across the entire width of the lot, and shall not be less than twenty-four feet in depth from wall to wall, and shall be increased in depth as prescribed in section fifty-four of this act. Where a single tenement house hereafter erected runs through from one street to another street and also occupies the entire block, no yard need be provided. Where a single tenement house hereafter erected is situated on a lot formed by the intersection of two streets at an acute angle, the yard of the said house need not extend across the entire width of the lot, provided that it extends to a point in line with the middle line of the block." Laws 1903, p. 407, c. 179.

These sections must be read in connection with the definitions of "yard," "court," and "cellar" given in chapter 1 (Laws 1901, p. 889, c. 334):

"A yard is an open, unoccupied space on the same lot with a tenement house, between the extreme rear line of the house and the rear line of the lot. A court is an open unoccupied space, other than a yard, on the same lot with a tenement house. A court not extending to the street or yard is an inner court. A court extending to the street or yard is an outer court. If it extends to the street it is a street court. If it extends to the yard it is a yard court. * * * A cellar is a story more than one-half below the level of the curb."

It is to be observed preliminarily that the relators' lot is more than 100 feet in depth, is not a corner lot, and that the proposed building is not to occupy an entire block, nor is it to be situated on a lot formed by the intersection of two streets at an acute angle. While the various sections quoted are important in determining legislative intent, the precise provision applicable to the case at bar is that portion of section 56 which reads:

"Where such lot is over one hundred feet in depth such yard space shall be left through the center of the lot midway between the two streets, and shall extend across the entire width of the lot, and shall not be less than twenty-four feet in depth from wall to wall and shall be increased in depth as prescribed in section fifty-four of this act."

Reading this provision in connection with section 53, requiring that "behind every tenement house * * * there shall be a yard extending the entire width of the lot," it is clear that no building can be erected without yard space. The use of the word "shall" in the act is mandatory in every instance, and denotes that the house shall be maintained in all respects according to the mandate. Section 1, subd. 10. Courts cannot be substituted for yards. Inner or outer courts are additional to yard spaces, but cannot be substituted for them. They may be rendered necessary or advisable according to the plan of construction, the landlord's desire to put up a building with a maximum supply of light and ventilation, or the exigencies of other sections of the act, as, for instance, section 67, requiring that all rooms other

than water-closet compartments and bathrooms shall have at least one window opening directly upon the street or upon a yard or court. But in no case can they be accepted in place of yard spaces unless they are such in fact. An examination of the relators' plan shows that they seek to substitute interior courts for yard spaces. The plan they submit does not show a yard extending the entire width of the lot, as required by section 53, nor a yard space through the center of the lot, midway between the two streets, 25 feet from wall to wall, extending across the entire width of the lot, as required by section 56. The phrase "entire width of the lot" is not of doubtful or ambiguous meaning. It does not mean two open spaces interrupted by a solid wall of masonry extending across the center of the lot midway between the two streets. It is to my mind so clear in its meaning that it cannot be better defined than by its own terms. In fact, it would not merit construction, were it not for the opening words of section 56, which the relators invoke as determinative of the correctness of their contention. They claim that, because the section begins, "Wherever a tenement house hereafter erected is upon a lot which runs through from one street to another street," etc., no construction of any part of the section would be warranted which would compel the erection of two houses on a lot running from street to street. They claim that the provision for yard spaces must be given such a construction as to enable a single house to be built in every instance; in other words, that the section requires the erection of a single house. No such construction can be forced upon the language used. Even if there were an irreconcilable conflict between the opening sentence and the very clear and specific provision as to yard spaces, I am of the opinion that the words "tenement house" in the opening phrase would have to be construed as plural to satisfy the all-important and unequivocally expressed provision that the yard space should extend the entire width of the lot. But I see no such conflict.

Technically, even the forced construction of the relators might be satisfied; for it is conceivable that the main buildings on the St. Nicholas and Amsterdam avenues be connected by one cellar under the necessary yard spaces. The cellar being regarded as one story (section 1, subd. 8), the entire construction could be called one tenement house. It is unnecessary, however, to go into such refinements. It is well within the scope of section 56 that two houses would have to be built to satisfy the yard space requirements. It is to be noted that the section is entitled "Yard Spaces of Lots Running Through from Street to Street," and the opening sentence, so much relied on by the relators, does not contemplate a building running through from street to street, but a lot so running. "Wherever a tenement house hereafter erected is upon a lot which runs through from one street to another street," then the yard spaces shall be as prescribed. The particular part of this section here controlling begins: "Where such lot is over 100 feet in depth," then the yard space shall be as prescribed. The question of building is quite subordinate throughout. The preservation of yard spaces on the lot is the significant feature. Of course, a lot is to be

used for the purpose of building, and the sections are enacted in recognition of this fact. But the dominant note of the provision is, not the single tenement building, but the preservation of the uniform yard spaces. In several of the classes of cases under section 56 it is possible to build a single house, in others, it may not be. This, I think, the wording of the section itself recognizes, for in the sentence immediately following the one quoted as specifically applicable the language is: "Where a single tenement house," etc., thus recognizing, impliedly at least, that the preceding provisions contemplate the erection of more than a "single tenement house." But, whether one house or two, the yard space, on a lot running through from street to street, must be left as prescribed in the section. The provision is not arbitrary. The legislative intent is perfectly clear from this and other sections of the act to provide in the center of every city block open spaces extending across the width of each lot. The provision contemplates, not merely sufficient light and air for the occupants of the particular tenement, but has reference as well to the adjoining buildings. It is dual in its nature. It aims to an extent at continuity of yard space, permitting free currents of light and air, not blocked by uninterrupted building walls.

The relators present various affidavits tending to show that their proposed construction would give more light and air than that required by the respondent. The fact is denied by the answering affidavits. But, whether true or not, the consideration cannot be entertained, in view of the mandatory provision of the tenement house act. There is no discretion vested in the respondent, and none in the court. It may very well be that there is hardship in this particular case; but, even if so, this is merely one of that large class where questions of individual sacrifice are unimportant in view of the general good. The Legislature, in its exercise of the police power, legislates to promote the welfare of the community at large, and the individual case must be governed by the general rule. It is so here.

It follows that the motion for a peremptory writ must be denied, with costs.

Motion denied, with costs.